PEOPLE *v.* STORRICK.

CRIMINAL LAW—HOMICIDE—TRIAL—INSTRUCTIONS.

On reviewing the conviction of defendant of murder by poisoning, where the charge of the trial judge was a long one and an evident attempt to cover every phase of the case, and counsel for defendant did not ask to have the charge amplified or prefer any written requests to charge, and an examination thereof and of the record and briefs fails to reveal any reversible error, the judgment is affirmed. CLARK, C. J., and MCDONALD, J., dissenting, on the ground that the charge was prejudicial.[1]

Error to Cass; Des Voignes (L. Burget), J. Submitted June 13, 1924. (Docket No. 96.) Decided October 30, 1924.

Maude Cushing-Storrick was convicted of murder in the first degree, and sentenced to imprisonment for life in the Detroit house of correction. Affirmed.

*Edward N. Barnard,* for appellant.

*Andrew B. Dougherty,* Attorney General, *Homer H. Quay,* Assistant Attorney General, and *Asa K. Hayden,* Prosecuting Attorney, for the people.

MOORE, J. The defendant was convicted of murdering her husband, Claude Cushing, by giving him poison, and was sentenced to life imprisonment in the Detroit house of correction. The case is brought into this court by writ of error.

The eight assignments of error relied upon all relate to the charge of the court. We quote from the brief of counsel:

---

[1]Criminal Law, 16 C. J. § 2501.

"It being our contention that the trial judge usurped the function of the jury, indicated the weight to be given certain testimony, laid too great stress upon the testimony adduced by the people, recapitulated the evidence on one side, without doing so on the other, strongly intimated his opinion as to defendant's guilt, and, in a word, deprived respondent of that fair and impartial jury trial contemplated by our Constitution. * * *

"It will be found that the offensive portions, and indeed the body of the charge must be considered in the light of its opening sentences covered by our tenth assignment. Around this particular point revolves all of the many passages upon which error is predicated. We quote:

"'It now remains for the court to tell you the principles of law applicable to this case, and render you such aid as may be in its power in classifying and arranging the testimony and indicating the proper weight belonging to its various parts in your consideration of it.'"

Counsel especially criticizes the following:

"Upon that question the people contend that they have shown declarations of defendant that indicate a total disregard of affection for her husband, the late Claude Cushing. They contend that several years prior to the death of Cushing, and in the years 1919 and 1920 that defendant left him, going on two occasions to Detroit, where for some weeks or months she maintained apartments of her own and later returned; that while in Detroit she had two or three boarders, one of them being a Mr. Storrick, her present husband. They contend that at another time she left the home of Claude Cushing, going to Benton Harbor, where she rented apartments, being absent some weeks or months; and during the period it is claimed by the people, Mr. Storrick above referred to, made week end visits to her home; that she told people by the name of Wales—the mother and son, who were living in an adjoining flat—that he, Storrick, was her husband and the little boy that was here called him 'Dad;' that during the periods of her absence from

home she instituted three divorce suits at different times; that the night of her husband's death she caused a message to be sent to Storrick in Kansas City stating 'Claude is dead;' that within thirty days after her husband's burial she married Storrick and with him removed from Dowagiac to Kalamazoo. The people also contend that she made declarations to a neighbor, prior to the death of her husband, wherein in substance it was stated—for you to remember all of this for yourselves—'What can we give our husbands to put them out of the way?' or that in substance—these and other declarations which I shall not recite but which you will remember—and the people in the final analysis claim that defendant became infatuated with Storrick and desired to rid herself of her husband, Claude Cushing."

Counsel says:

"It would require but slight embellishment of the language thus used to convince one it was employed in argument by the prosecuting attorney himself. No mention whatever is made, in connection with these assertions, of the defendant's contentions or claims respecting the several subjects-matter, nor is it stated in connection with any one of the inferences drawn or conclusions arrived at by the people, that any other inference or conclusion might be drawn or come to by reasonable men."

In this connection it may be well to quote other portions of the charge as follows:

"There are two material questions presented here for your consideration: *First*, Did Claude Cushing come to his death from mercurial poisoning, that is, from bichloride of mercury? *Second*, Did the defendant, Maude Cushing-Storrick, administer or cause to be administered this poison with intent to take the life of Claude Cushing? * * * But gentlemen, it is quite apparent that after you have established in your mind the facts proven beyond a reasonable doubt great care and caution ought to be used in drawing the inferences from those facts. Those inferences

must be fair and natural, not forced or artificial.    You should use your common sense and good judgment and the inferences to be drawn from the facts must be a natural and reasonable one and to a moral certainty. It will not do that it is probable only.    It must be reasonably and morally certain.

"Another consideration is that each fact which is necessary to the conclusion must be proven by competent evidence.    The circumstances all taken together must be of a conclusive nature and tendency leading on the whole to a satisfactory conclusion and producing in effect a reasonable and moral certainty that the accused and no one else committed the offense charged.    *    *    *

"The weight and credit to be given to any circumstance, or to the testimony of any witness, or the opinion of any expert, are solely for your determination.    If upon considering all the testimony as to the cause of death you are not satisfied beyond a reasonable doubt that mercurial poisoning caused the death of Claude Cushing, your verdict should be not guilty.

"If you find beyond a reasonable doubt that Claude Cushing died from mercurial poisoning but do not find beyond a reasonable doubt that it was administered with intent to kill, your verdict will be not guilty.

"If you find beyond a reasonable doubt that Claude Cushing's death was the result of mercurial poisoning administered with intent to kill, you will proceed to the consideration of the second proposition, that is, Did defendant, Maude Cushing-Storrick, administer or cause to be administered the poison with the purpose of taking the life of Claude Cushing?    *    *    *

"Again, on the question of motive, you should not only consider the evidence of the people, but as I have said, all the evidence; the explanation, if any, offered by the defendant's witnesses, including the statement made by the defendant, anything in this evidence that was admitted that will in any way aid you in determining the truth, and the reasonableness and true deductions you should make thereon as bearing on the question of motive.    *    *    *

"I have observed during the trial that you had been attentive listeners to the evidence and I have no doubt

that all the prominent parts of it are engraven on your memory. From all the evidence you should make diligent inquiry on this second proposition and if after such consideration you find that Claude Cushing died of mercurial poisoning that got into the body by accident, by mistake, or from medicine he was taking, or in any other way than by the wilful and deliberate act of the defendant with intent to kill him, the defendant cannot be convicted.

"I told you on the first day of the term, and I reiterate it now, the law presumes this respondent innocent, as it does all charged with criminal offenses, and this presumption continues and prevails all through the case until you are satisfied from the evidence beyond a reasonable doubt of the guilt of the accused, and acting on this presumption you should acquit the respondent unless constrained to find her guilty, and the evidence convincing you of such guilt beyond a reasonable doubt.   *   *   *

"The jury should decide the case with reference alone to the testimony actually introduced before them and without reference to what might or might not have been proved if any persons had testified. If any one or more of you, after consulting with your fellow jurors, have a reasonable doubt as to the defendant's guilt, you should not find her guilty.   *   *   *

"Gentlemen, I have now discharged the duty which the law imposes upon me in this most painful and exciting trial.   *   *   *   My duty is now ended and you have to retire to your jury room calmly to deliberate and decide on the fate of this woman at the bar. Meet your whole duty like men, feeling your deep responsibility and the solemnity of your oaths while you deal justly by her; for, I have before instructed you, if you have a reasonable doubt of her guilt, she is entitled to your verdict of acquittal. If upon the other hand on a review of the whole case, you deem the charge proven, it is your duty to your State and your God to say so, though it be with sorrow of heart and may cause shame and sorrow to others."

The charge is a long one, covering more than 12 pages of the printed record. A reading of it makes it clear that the trial judge attempted to give the law

applicable to every phase of the case.    It is a fair inference that the able counsel then representing the defendant thought the judge had done so, for they did not ask him to amplify any portion of his charge, nor did they prefer any written requests to charge. A careful reading of this voluminous record and the briefs and the zealous argument of counsel do not satisfy us that any reversible error has been committed.

The judgment is affirmed.

BIRD, SHARPE, STEERE, FELLOWS, and WIEST, JJ., concurred with MOORE, J.

CLARK, C. J. (*dissenting*).    In opening his charge, the trial judge said:

"It now remains for the court to tell you the principles of law applicable to this case, and render you such aid as may be in its power in classifying and arranging the testimony, and indicating the proper weight belonging to its various parts in your consideration of it."

This was followed shortly by a most complete review of the evidence adduced by the prosecution, in which every important item of such evidence was stressed and emphasized, and certain of the most damaging of the testimony was repeated verbatim to the jury.    But a small part of such review is quoted in the opinion of Mr. Justice MOORE.    If the telling array of the State's evidence had opposed to it a review of the evidence adduced by defendant, and if the salient features of the defense also had been stressed and emphasized, the charge could be passed.    But, lacking such balance, it is very prejudicial.    Defendant's three children and other witnesses gave testimony which, if believed, would account, on this record, for the presence of poison in the body of the deceased.

Defendant had a defense on the merits. That the charge was otherwise free from objection does not excuse the prejudice stated. In this case the judge had no right to indicate to the jury "the proper weight belonging to * * * various parts" of the evidence. The weight of all the evidence was for the jury alone. *People* v. *Heikkala,* 226 Mich. 332, and cases there cited.

The judgment should be reversed, and a new trial granted.

MCDONALD, J., concurred with CLARK, C. J.